[S.F. No. 23053. In Bank. Jan. 13, 1975.]

SEBASTIAN CARMONA et al., Petitioners, v.
DIVISION OF INDUSTRIAL SAFETY et al., Respondents.

**COUNSEL**

Maurice Jourdane, Martin R. Glick, Derek Westen and Fred H. Altshuler for Petitioners.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General and Asher Rubin, Deputy Attorney General, for Respondents.

Titchell, Maltzman, Mark, Bass & Ohleyer and Richard D. Maltzman as Amici Curiae on behalf of Respondent.

**OPINION**

**TOBRINER, J.**—Petitioners, numerous farmworkers employed in the Salinas Valley, instituted the present proceeding to challenge a decision of the California Division of Industrial Safety (hereafter "division") which determined that the "short-handled hoe" is not an "unsafe hand tool" within the meaning of an administrative regulation prohibiting the use of such unsafe tools. After conducting a series of hearings on the issue, the division concluded that because the harm allegedly caused by the short-handled hoe arises only from the manner in which the tool is used, and not from any inherent physical defect in the tool itself, prohibition of the use of the hoe under the existing regulation "would be

an arbitrary and unreasonable extension of its authority." Petitioners seek review of the agency's ruling, contending primarily that the decision lacks the support of substantial evidence.

As discussed below, we have concluded that the decision of the agency must be set aside. In interpreting the applicable regulation to prohibit only the use of tools which are unsafe because of some intrinsic flaw in the tool itself, the division has given the regulation an unduly narrow interpretation, supported neither by the language of the regulation nor by the authorizing statutory provisions. As we explain, the governing provisions of the Labor Code speak in broad and generous terms in mandating California employers to do "*every . . . thing reasonably necessary* to protect the life and safety of employees" and in authorizing the division to promulgate and enforce regulations implementing the employers' comprehensive responsibility. Because a defectively designed tool which causes injury as a result of the manner in which it must regularly be used can be just as harmful to employees as a defectively manufactured tool or a tool in poor condition, we believe the agency erred in confining the regulation's ban of "unsafe tools" to improperly manufactured or improperly maintained implements. Accordingly, we remand the matter to the agency so that it can determine the question of whether the short-handled hoe is an "unsafe hand tool" under the proper legal standard.

Former section 6500 of the Labor Code authorized the Division of Industrial Safety to promulgate regulations prescribing "what safety devices, safeguards. or other means or methods of protection are well adapted to render the employees of every employment and place of employment safe as required by law or lawful order."[1] Pursuant to this authority, the agency promulgated scores of detailed regulations prescribing specifications for all varieties of tools and industrial machin-

---

[1]On October 1, 1973—subsequent to the rendition of the challenged agency decision, but prior to the filing of the present proceeding—the California Occupational Safety and Health Act of 1973 went into effect. The new legislation effected a considerable reorganization of the statutory provisions governing the activities of the Division of Industrial Safety, and established a new body, the Occupational Safety and Health Standards Board, as the new "legislative" branch of the agency empowered to promulgate general safety and health orders and standards. (See Lab. Code, § 140 et seq.) The 1973 act repealed former section 6500 but reenacted the provision in substantially similar form as new section 6308. The 1973 act also specifically provided that existing regulations of the agency "shall continue to remain in effect" unless amended or repealed by the new board. (Lab. Code, § 142.) The regulation at issue in this case (Cal. Admin. Code, tit. 8, § 3316) has been neither amended nor repealed, and accordingly the regulation remains fully in effect.

ery. One such regulation governs the use of hand tools, providing simply: "Hand tools shall be kept in good condition and be safely stored. *Unsafe hand tools shall not be used.*" (Italics added.) (Cal. Admin. Code, tit. 8, § 3316.)

Beginning in September 1972, petitioner farmworkers sought to have the division apply this "unsafe hand tool" regulation to prohibit any California employer from requiring his employees to use the "short-handled hoe." The "short-handled hoe" is approximately 12 inches long, and because of its truncated length farmworkers who use it must, for much of their working day, continuously bend over and work close to the ground. At three public hearings held before the Industrial Safety Board,[2] petitioners produced abundant medical evidence that the working position necessitated by the short-handled hoe results in severe cumulative back injuries for most farmworkers who use it over any appreciable length of time.[3] Many individual farmworkers also testified to the great physical agony and considerable disability which they had personally experienced from their use of the short-handled hoe.

At the hearings petitioners additionally attempted to demonstrate that the physical injuries resulting from the use of the short-handled hoe were

---

[2] The 1973 legislation (see fn. 1, *supra*) terminated the existence of the Industrial Safety Board and established a new Occupational Safety and Health Standards Board in its stead. The two boards are not precisely equivalent, however, for while the current provisions indicate that the new board is to exercise only quasi-legislative powers, the Industrial Safety Board, under former section 6500, participated in both quasi-legislative and quasi-judicial proceedings.

[3] Eleven physicians, who either specialized in back problems or had extensive experience in treating farmworkers, testified at the hearings. All agreed that the use of the short-handled hoe over a substantial period of time would cause abnormal degeneration of the spine, resulting in irreparable back injury and permanent disability. One of the doctors described the relationship of the short-handled hoe to cumulative back injuries as follows: "[M]aintaining the body in a bent position as is necessary when using the short hoe places great stresses on the intervertebral discs of the spine which accelerates the development of degenerative diseases of the spine which occurs secondary to the disc degeneration. As the disc degenerates, [it] can no longer tolerate this stress. The stress is transmitted to the bones and to the other joints which is the disease that we call arthritis. The degeneration occurs in the joints and the bones as well as in the intervertebral discs. Performance of even simple activities while in the bent position adds further stress, which are magnified many times over what they would be in an erect position. The result of this is a worker whose spine ages more rapidly than the rest of his body until a point is reached where he is no longer able to work because of low back pain."

Another doctor, who had spent several years studying the medical problems of farmworkers and who had written a dissertation on the subject concluded: "There is no doubt in my mind that the short hoe plays a very important and significant role in the development of pathology of the low back region and should be considered a health hazard of major proportions to the segment of the population which is required to use this tool."

largely unnecessary because a traditional, long-handled hoe was an acceptable substitute tool; petitioners submitted evidence demonstrating that a long-handled hoe is used for all crops in most farming regions of the United States. Many growers who appeared at the hearings, however, contested petitioners' claim that a long-handled hoe was an acceptable substitute, contending that specific agricultural problems posed by particular crops required the use of the short-handled hoe. These growers, as well as a few individual farmworkers, asserted that adequate weeding and thinning could not be efficiently accomplished with a long-handled hoe.

Several months after the hearings, the agency issued its decision, concluding that "the testimony failed to prove that the short-handled hoe was an unsafe tool within the purview of 8 California Administrative Code 3316." The decision stated in relevant part: "This safety order [section 3316] bears primarily on the proper maintenance and care of hand tools and the prohibition of unsafe hand tools. The evidence dealt with the use of the short-handled hoe. The tool itself was not proved to be inherently dangerous. The board felt that a general prohibition of the short-handled hoe would be an arbitrary and unreasonable extension of its authority."

Petitioners thereafter sought judicial review of the agency decision. Having determined that the case presented a significant issue respecting the proper scope of the agency's authority in this field, we issued a writ of review.[4]

---

[4]Prior to the enactment of the Occupational Safety and Health Act of 1973, virtually all of the division's decisions were reviewable by writ of review in the Courts of Appeal and Supreme Court. (See former Lab. Code, §§ 6600, 6601.) Petitioners relied on these sections in seeking review, and though the respondent agency filed an answer objecting to the issuance of a writ of review on the merits, the agency initially raised no jurisdictional contentions. After this court had issued a writ of review, however, respondents for the first time pointed out that the 1973 legislation—which went into effect 10 days before the initial petition for writ of review had been filed—had repealed sections 6600 and 6601; the agency belatedly requested that we vacate our order issuing the writ of review.

Although the 1973 legislation repealed former section 6600, the provisions of that section were largely recodified in new section 6308, which provides in relevant part that "All orders, rules, regulations, findings and decisions of the division made or entered under this part may be reviewed by the Supreme Court and the courts of appeal as may be provided by law." Thus, under the present section 6308, this court retains jurisdiction to review decisions of the division interpreting and applying existing regulations. Accordingly, on August 14, 1974, we denied the agency's motion to vacate our initial order.

With the repeal of former section 6601, however, a writ of review is no longer indubitably the proper remedy. Because the division's decision rests on its conclusion

■ Initially, we must determine the appropriate standard of review applicable in this case. The respondent agency contends that the decision at issue here is a *quasi-legislative* act and, as such, is subject only to a limited judicial review to determine whether the administrative action was "arbitrary" or "capricious." (See, e.g., *Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 834-835 [27 Cal.Rptr. 19, 377 P.2d 83]; *Ray* v. *Parker* (1940) 15 Cal.2d 275, 310-311 [101 P.2d 665]; *Brock* v. *Superior Court* (1952) 109 Cal.App.2d 594, 603-604 [241 P.2d 283].) In characterizing the agency decision at issue as quasi-legislative, respondents take the position that throughout these proceedings petitioners have been urging the agency to promulgate a *new* regulation or general order, specifically banning the use of the short-handled hoe throughout California, and that the challenged decision is essentially a determination by the agency not to establish such a regulation. A review of the administrative proceedings and, indeed, of the agency's decision itself, however, reveals the inaccuracy of this portrayal of the relief sought by petitioners.

The original petition filed with the agency did not request the promulgation of a new regulation directed at the use of the short-handled hoe, but instead sought enforcement of the *existing* regulation, section 3316—banning the use of "unsafe hand tools"—to prohibit the hoe's continued use.[5] Moreover, during the administrative hearings petitioners' counsel clearly indicated that the relief sought by petitioners in this proceeding was the enforcement of "the regulation that is on the books" and not the establishment of a new safety order.[6] Finally, the

---

that it has no authority to ban the short-handled hoe as an "unsafe hand tool," we conclude that the more appropriate remedy under these circumstances is a writ of mandate to compel the division to exercise jurisdiction and determine whether the short-handled hoe is "unsafe" under the existing regulation. (See, e.g., *Hollman* v. *Warren* (1948) 32 Cal.2d 351, 355 [196 P.2d 562]; *Carter* v. *Com. on Qualifications, etc.* (1939) 14 Cal.2d 179, 181 [93 P.2d 140]. See generally 5 Witkin, Cal. Procedure (2d ed.) Extraordinary Writs, § 76, pp. 3852-3853.) Although petitioners formally sought a writ of review and not a writ of mandate, we clearly have authority to treat the petition before us as one for mandate. (See, e.g., *Owens* v. *Superior Court* (1969) 52 Cal.2d 822, 827 [345 P.2d 921, 78 A.L.R.2d 388]; *Honore* v. *Superior Court* (1969) 70 Cal.2d 162, 164-165 [74 Cal.Rptr. 233, 449 P.2d 169]. See generally 5 Witkin, Cal. Procedure (2d ed.) Extraordinary Writs, §§ 183-184, pp. 3942-3944.)

[5]The petition filed with the agency concluded: "Unless the Division of Industrial Safety enforces section 3316, by prohibiting the use of any hoe which causes workers to remain for extended periods in a stooped position, petitioners and those they represent will be irreparably harmed. . . . WHEREFORE Petitioners Pray that the Division of Industrial Safety of the State of California, enforce section 3316 of Title 8 of the Administrative Code and prohibit the use of the unsafe hand tool commonly called the short handled hoe."

[6]The relevant portion of the transcript reads as follows: "[Petitioners' counsel:] Let me say in conclusion, I think the order exists now. We could go through a long delayed

language of the administrative decision unmistakably indicates that the division itself viewed the question before it as a matter involving the interpretation and application of an existing regulation, for the decision is framed in terms of the petitioners' failure to prove "that the short-handled hoe was not an unsafe hand tool *within the purview of 8 California Administrative Code 3316.*" (Italics added.) Accordingly, the agency decision under review here is not a quasi-legislative judgment declining to promulgate a new regulation, but rather involves the interpretation and application of an existing regulation.

In reviewing such an agency decision a court must determine whether the administrative agency applied the proper legal standard in evaluating the evidence before it. (See, e.g., *Covert* v. *State Board of Equalization* (1946) 29 Cal.2d 125, 133 [173 P.2d 545].) ■ The interpretation of a regulation, like the interpretation of a statute, is, of course, a question of law (see, e.g., *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 917 [80 Cal.Rptr. 89, 458 P.2d 33]; *Bila* v. *Young* (1942) 20 Cal.2d 865, 867 [129 P.2d 364]), and while an administrative agency's interpretation of its own regulation obviously deserves great weight (see, e.g., *County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 643 [122 P.2d 526]; 4 Davis, Administrative Law (1958) § 30.12, pp. 258-259), the ultimate resolution of such legal questions rests with the courts. (See, e.g., *Merrill* v. *Department of Motor Vehicles, supra,* 71 Cal.2d 907, 917; *Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 325-326 [109 P.2d 935]; *Schild* v. *Busch* (S.D. Tex. 1968) 293 F.Supp. 1353, 1354-1355.)

■ In the instant case, the initial issue turns upon whether the division properly interpreted section 3316's reference to "unsafe hand tools." The challenged decision holds that the regulation's prohibition of "unsafe hand tools" applies only to tools which in themselves are "inherently dangerous" and not to tools which cause danger from the manner of their "use." Although the administrative decision does not clearly explain what constitutes an "inherently dangerous" tool,[7] respondent's brief suggests that the division would include within such a

---

process of filing for a safety order which I think clearly is already on the books. There could be a more specific one that says short-handled hoes are outlawed, or a hoe with a handle less than 18 inches is outlawed, but that isn't necessary. The Order exists now, the problem exists now, the season is just starting . . . I just ask that this Board enforce the regulation that is on the books. . . ."

[7]The agency's terminology is far from self-explanatory. Although the decision purports to draw a distinction between tools which are "inherently dangerous" and those which are only dangerous because of their "use," as a practical matter almost all "unsafe" tools are only unsafe when used and would not constitute an "inherent danger" if not in use. (Cf. *People* v. *Satchell* (1971) 6 Cal.3d 28, 39-41 [98 Cal.Rptr. 33, 489 P.2d 1361, 50

category tools which are either defectively manufactured or improperly maintained and which pose a danger of immediate injury. Thus, by way of example, the agency explains that in its view the regulation at issue is generally directed at dangers comparable to those imposed by a hammer with a partially broken handle or by an axe with a loose head.

While the ban on unsafe hand tools would, indeed, include the types of tools just mentioned, the regulation, in our thinking, would, as well, cover tools that create the danger of injury, whether immediate or cumulative (cf. *Beveridge* v. *Industrial Acc. Com.* (1959) 175 Cal.App.2d 592 [346 P.2d 545]), because of the manner of their use. As a number of our recent decisions in the products liability field stress, a defectively designed product which may cause injury only as a result of its use can be just as dangerous or "unsafe" as a defectively manufactured item. (See *Cronin* v. *J.B.E. Olson Corp.* (1972) 8 Cal.3d 121, 134 [104 Cal.Rptr. 433, 501 P.2d 1153].) The fact that there is no physical "imperfection" in the product itself does not guarantee the product's safety. (See, e.g., *Pike* v. *Frank G. Hough Co.* (1970) 2 Cal.3d 465, 475-477 [85 Cal.Rptr. 629, 467 P.2d 229].)

The decision of the agency in the instant case provides no explanation for its narrow construction of the regulation. Nothing in the simple and clear language of section 3316 ("Unsafe hand tools shall not be used") suggests that the regulation was intended to apply only to certain subclasses of "unsafe tools."[8] Moreover, as explained below, the very

---

A.L.R.3d 383].) Thus, defendant's own example of the paradigmatic "unsafe tool"—an axe with a loose head—is only unsafe when actually used by an employee; if such an axe is left lying in a closet or on a table, it will not generally cause injury. The illustrations of unsafe tools cited by defendant suggest that the test it is applying is not one of "inherent danger" but rather involves some physical imperfection or flaw.

[8]To support its narrow interpretation of the regulation, respondent agency has submitted a declaration of one of its employees who ostensibly was involved in the initial drafting of the regulation at issue in this case. After enumerating certain examples of what he considers to be "unsafe tools," the employee suggests that "[s]uch things as chronic illness which might be caused by long term usage of a tool were not considered within the scope of the objective sought to be achieved by [section 3316]." For several reasons, we believe such declaration is entitled to little, if any, weight.

First, it is well established that courts will generally not rely even on statements made by individual *lawmakers* as a reliable expression of the intent of the entire legislative body. (See, e.g., *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 258 [104 Cal.Rptr. 761, 502 P.2d 1049]; *In re Lavine* (1935) 2 Cal.2d 324, 327 [41 P.2d 161, 42 P.2d 311].) In view of this general rule, it seems clear that the proffered declaration—made by an individual who did not vote to adopt the regulation and who in fact had no authority to do so—can be given little credence. There is absolutely no showing that the present "interpretive" declaration was before the rulemaking body of the agency when

comprehensiveness of the governing statutory provisions that establish the agency's authority in this field negate the agency's suggestion that "it would be an arbitrary and unreasonable extension of [the agency's] authority" to prohibit a tool which is unsafe only as an incident of its use.

In establishing an employer's duty to maintain a safe working environment, the relevant Labor Code provisions speak in the broadest possible terms. Thus, for example, at the time of the present agency decision, Labor Code section 6401 provided: "Every employer shall furnish and use safety devices and safeguards and shall adopt and use practices, means, methods, operations and processes which are reasonably adequate to render such employment and place of employment safe. *Every employer shall do every other thing reasonably necessary to protect the life and safety of employees.*" (Italics added.) In like manner, section 6402 provided: "No employer shall require, or permit an employee to go or be in any employment or place of employment which is not safe." (See also Lab. Code, § 6403.)[9]

Other provisions of the Labor Code specifically mandate the division to enforce the foregoing comprehensive provisions as well as all other "laws and lawful . . . orders . . . requiring . . . employment and place[s] of employment to be safe . . . ." (Lab. Code, § 6307; see also Lab. Code, §§ 142, 6308.) In order to accomplish such enforcement, section 6307 (former § 6312) bestows upon the agency all "power, jurisdiction and supervision over every employment and place of employment in this state, which is necessary adequately to enforce and administer" such laws. And section 6308 (former § 6500) establishes the division's broad authority to "[d]eclare and prescribe what safety devices, safeguards or other means or methods of protection are well adapted to render the employees of every employment . . . safe . . . [and to] [r]equire the performance of any other act which the protection of the life and safety of the employees in employments and places of employment reasonably demands."

section 3316 was promulgated.

Moreover, the facts of the instant case illustrate the great potential for abuse that would arise if the proffered declaration were given significant weight. The declaration at issue was prepared by an employee of one of the parties to this litigation subsequent to the filing of judicial proceedings. The self-interest inherent in such a process removes from the declaration the appearance of impartiality necessary to justify any reliance by the court.

[9] The 1973 legislation reenacted these provisions in substantially similar form, amending the sections only to provide explicitly that employers have a duty to protect the "health" of their employees as well as their "safety."

Finally, additional statutory provisions make clear that the terms of the legislation are to be given a liberal interpretation for the purpose of achieving a safe working environment. Thus, section 6306, subdivision (b) (former § 6311) provides that in interpreting the relevant provisions " '[s]afety device' and 'safeguard' shall be given a broad interpretation so as to include any practicable method of mitigating or preventing a specific danger," and section 6306, subdivision (a) (former § 6310) declares that " 'safe' [and] 'safety' . . . as applied to an employment or a place of employment means such freedom from danger to the life [or] safety . . . of employees as the nature of the employment reasonably permits."

Given the comprehensive sweep of the legislation and the clear language of the regulation, we conclude that the agency erred in interpreting section 3316's prohibition of "unsafe hand tools" to *exclude* tools which are harmful only as a result of the manner in which they must be used. We hold that any hand tool which causes injury, immediate or cumulative, when used in the manner in which it was intended to be used may constitute an "unsafe hand tool" within the meaning of the regulation. If the short-handled hoe is so designed that it can be used by the worker only in a stooped posture that is dangerous to his health it could be found to be an "unsafe hand tool."

We must now determine the appropriate disposition of this case. Petitioners urge this court to prohibit all future use of the short-handled hoe, arguing that the present record establishes, as a matter of law, that the short-handled hoe is an "unsafe hand tool." Petitioners rely primarily on the fact that the medical evidence produced at the public hearings, detailing the significant back injuries resulting from the use of the short-handled hoe, was largely uncontradicted; given the causal connection between the short-handled hoe and back disabilities, petitioners contend that such a hoe is "unsafe" as a matter of law.

The determination of whether a tool is impermissibly "unsafe," however, involves more than a simple decision as to whether it causes some injuries; the heavy head of a traditional hammer, for example, may inevitably cause many sore thumbs but that in itself does not demonstrate that the hammer is unsafe. As noted above, section 6306, subdivision (a) (former § 6310) defines "safe" and "safety" as "such freedom from danger . . . as the nature of the employment reasonably permits" and section 6306, subdivision (b) (former § 6311) specifies that in determining the safeguards which an employer must adopt, the word

" 'safeguard' shall be given a broad interpretation so as to include any practicable method of mitigating or preventing a specific danger." On the instant record, this court cannot determine, as a matter of law, whether under these statutory standards the short-handled hoe is safe or not; that determination is properly a judgment to be made in the first instance by the respondent agency, applying the proper legal standard.

In sum, we conclude that the respondent agency erred in determining that it would be an "unreasonable extension of its authority" to find that the short-handled hoe is an "unsafe hand tool" within the meaning of title 8, section 3316 of the California Administrative Code.

Let a peremptory writ of mandate issue, directing respondent division to set aside its decision and reconsider the matter in accordance with the views expressed in this opinion.

Wright, C. J., McComb, J., Mosk, J., Sullivan J., Clark, J., and Burke, J.,* concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.