[Civ. No. 30395. Fourth Dist., Div. Three. Nov. 7, 1983.]

JOAN E. WOLFMAN, Plaintiff and Respondent, v.
BOARD OF TRUSTEES OF THE STATE TEACHERS'
RETIREMENT SYSTEM, Defendant and Appellant.

COUNSEL

John K. Van de Kamp, Attorney General, Richard D. Martland, Chief Assistant Attorney General, and Janelle B. Davis, Deputy Attorney General, for Defendant and Appellant.

Harold Swatez for Plaintiff and Respondent.

OPINION

SONENSHINE, J.—The Board of Trustees of the State Teachers' Retirement System appeals a judgment granting a petition for writ of mandate directing issuance of disability allowances to Joan E. Wolfman.

The underlying facts are not in dispute and we adopt those of the trial court in its statement of decision: "[Wolfman] is a 36-year old elementary school teacher who taught for 12½ years before applying for a disability

allowance with respondent. [Wolfman] suffers from severe asthma and chronic bronchitis. She has been steroid-dependent since 1963 and will have to use steroids permanently. Steroids are potent and dangerous drugs, with extremely adverse side effects from prolonged use. In [Wolfman's] last year of teaching school (1978-79), she found it necessary to substantially increase her steroid intake in order to function and, even with that, she became increasingly ill.

"[Wolfman] has received competent medical advice that it would be very dangerous for her to return to teaching and that she should never do it because of the risk of worsening her condition due to her exposure to the rampant infectious agents which small children harbor."

## DISCUSSION

Initially, we note the trial court properly exercised its independent judgment on the evidence taken by the board at its administrative hearing. The testimony as to the effect of the disease on Wolfman is not in dispute; we do not, therefore, review the sufficiency of the evidence under Code of Civil Procedure section 1094.5. ▆▆▆ The sole issue on appeal is whether the degree of physical impairment testified to by Wolfson, her treating physician, and a doctor assigned to examine Wolfson on the board's behalf, amounts, as a matter of law, to a "medically determinable physical or mental impairment which is permanent . . . which prevents a member from performing the member's usual duties for the member's employer. . . ." (Ed. Code, § 22122.)[1] We conclude it does.

▆▆▆ The construction of an administrative regulation and its application are matters of law, and "while an administrative agency's interpretation of its own regulation obviously deserves great weight [citations], the ultimate resolution of such legal questions rests with the courts." (*Goddard* v. *South Bay Union High School Dist.* (1978) 79 Cal.App.3d 98, 105 [144 Cal.Rptr. 701], quoting from *Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 [118 Cal.Rptr. 473, 530 P.2d 161].)

▆▆▆ Section 22122 of the Education Code has not previously been judicially construed and we therefore look to comparable retirement and dis-

---

[1] "'Disability' or 'disabled' means any medically determinable physical or mental impairment which is permanent or which can be expected to last continuously for at least 12 months, measured from the onset of the disability, but no earlier than the day following the last day of on the job performance, which prevents a member from performing the member's usual duties for the member's employer; or the duties of a comparable level for which the member is qualified within a reasonable period of time by education, training or experience. Any impairment from a willful self-inflicted injury shall not constitute a disability."

ability statutes. Government Code section 21022 defines eligibility for disability retirement under the Public Employees' Retirement System as "incapacitated for the performance of duty." In *Mansperger* v. *Public Employees' Retirement System* (1970) 6 Cal.App.3d 873 [86 Cal.Rptr. 450], a game warden applied for disability following a service-related injury. The board, trial judge, and appellate court found he was not disabled for his *usual* and *customary* duties, merely for heavy lifting, a "remote occurrence" in his occupation. The court held the term "incapacitated" meant "*substantial* inability of the applicant to perform his usual duties." (*Id.*, at p. 876.) In *Stuessel* v. *City of Glendale* (1983) 141 Cal.App.3d 1047 [190 Cal.Rptr. 773], the court further refined the definition, with regard to law enforcement officers, to mean "that where there are permanent light duty assignments available, ' "his duty" ' reasonably could be construed to refer to '*duties required to be performed in a given permanent assignment within the department . . . .*' (*Barber* v. *Retirement Board, supra,* 18 Cal.App.3d [273] at p. 278 [95 Cal.Rptr. 657]; italics in original.)" (*Id.*, at p. 1052.)

In *Hosford* v. *Board of Administration* (1978) 77 Cal.App.3d 854 [143 Cal.Rptr. 760], relied upon by the trustees, a highway patrol officer was released for limited duty following several injuries. A year later, his treating doctor gave him an "excuse" to remain off work indefinitely due to subjective pain, subjective fear of injury, and because he was "going to law school, and I therefore suggest a possible retirement for him," even though no further treatment was necessary. Again, the board, trial judge and appellate court found Hosford under some disability, but not "incapacitated" to perform his activities within the department. In particular, his claim that sitting for long periods would "probably bother his back" was considered by the court to be prospective only in light of the rarity of strenuous activity in his position and because of the driving and sitting for hours each day while attending law school.

Government Code section 31724, providing retirement for a member "permanently incapacitated physically or mentally for the performance of his duties," has been likewise interpreted in line with *Mansperger* v. *Public Employees' Retirement System, supra,* 6 Cal.App.3d 873 and its progeny. (*Harmon* v. *Board of Retirement* (1976) 62 Cal.App.3d 689 [133 Cal.Rptr. 154].)

In *Harmon,* an injured officer was reassigned as a bailiff, a position he held for a year before claiming pain from a "flare-up." Doctors for both Harmon and the board recommended reassignment to permanent light duty, which Harmon resisted. Additionally, evidence was produced counteracting his disability claim (motion pictures of his golf games), resulting in denial

of his request for disability allowance as there was no "substantial incapacity."

Both the hearing officer and the trial court found Wolfman had suffered aggravation of her severe bronchial asthma throughout her teaching career due to working conditions. Her treating doctor testified she was continually reinfected and severely so on seven occasions during her last year of teaching. Use of antibiotics increased as did the dosage of steroids with their resultant dangerous side effects of tiredness, weakness, susceptibility to diabetes, bleeding and hypertension. He stated she was particularly sensitive to dust, a hazard of her occupation, and the constant exposure to a pool of infections carried by young children. Although physically capable at the time of hearing to perform her duties, it would be medically unwise. Her improved state was due to the discontinuance of her classroom contacts and a resultant decrease in the steroids she required. Reinstatement would initiate the vicious circle of infection leading to severe pulmonary attack and increased necessity for dangerous steroid therapy.

Unlike *Mansperger, Harmon,* and *Hosford,* Wolfman *is* disabled from her *usual* and *customary* duties. Proximity to small children and their rampant infectious agents is not a remote occurrence nor an activity in which she indulges outside the classroom. There is no elementary teaching position to which she could be reassigned for limited duty that would not place her in the same contagious environment. Nor do we find her disability speculative within the context of *Hosford.* During her final years of employment she consistently reached a medically determinable stage of severity. It was not merely a prospective probability, but a medical certainty.

Her attempt to continue teaching last year, despite increased illness and exhaustion, does not mandate her returning to the classroom this year. Wolfman suffers from a chronic disease, preventing her from effectively performing her duties as a teacher. ■ "[T]he provisions for disability retirement are also designed to prevent the hardship which might result when an employee who, for reasons of survival, is forced to attempt performance of his duties when physically unable to do so." (*Quintana* v. *Board of Administration* (1976) 54 Cal.App.3d 1018, 1021 [127 Cal.Rptr. 11].)

Moreover, we find it significant that disability or retirement for a law officer requires "incapacity"[2] (Gov. Code, §§ 21022 and 31724), while a teacher's disability is determined upon a finding of "impairment."[3] (Ed.

---

[2]The American Heritage Dictionary (1981) at page 664: "incapacitate . . . 1. To deprive of strength or ability . . . ."

[3](*Id,* at p. 659): "impair . . . To diminish in strength, value, quantity, or quality."

Code § 22122.) We conclude Wolfman is disabled under the standards set forth in *Mansperger, Harmon,* and *Hosford.* She is a fortiori disabled under the less stringent statute and we need not explore the requirements of this lesser threshold.

Judgment affirmed; respondent to receive costs.

Trotter, P. J., and Crosby, J., concurred.