Filed 6/29/23; Certified for Publication 7/24/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| L & S FRAMING INC., | C096386 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV0046603) |
| v. | |
| CALIFORNIA OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD, | |
| Defendant and Respondent; | |
| CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS, | |
| Real Party in Interest and Respondent. | |

On August 20, 2016, Martin Mariano, an employee of plaintiff L & S Framing Inc., was working on a residential house under construction when he fell from the second floor onto the concrete ground floor below, sustaining serious injuries. Following an investigation, real party in interest California Department of Industrial Relations'

1

Division of Occupational Safety and Health (the Division) issued a notice of intent to cite plaintiff and subsequently issued a citation, which eventually included a serious accident-related citation for violation of California Code of Regulations, title 8, section 1626, subdivision (b)(5).[1] Plaintiff appealed the citation. An administrative law judge (ALJ) denied the Division's mid-hearing request to amend the citation to allege a violation of section 1632, subdivision (b)(1), denied the Division's post-hearing motion to amend to allege violation of section 1626, subdivision (a)(2), and concluded the Division failed to prove the alleged violation of section 1626, subdivision (b)(5). The Division filed a petition for reconsideration with the defendant California Occupational Safety and Health Appeals Board (the Appeals Board). The Appeals Board concluded the ALJ improperly denied the two requests to amend and upheld the citation based on violation of both section 1632, subdivision (b)(1) and 1626, subdivision (a)(2). Plaintiff filed a petition for a writ of mandate in the trial court, the trial court denied the petition, and plaintiff appeals.

Plaintiff asserts the trial court (1) erred in permitting the Appeals Board to amend the citation, (2) incorrectly concluded sections 1632, subdivision (b)(1) and 1626, subdivision (a)(2) applied, and (3) incorrectly concluded section 1716.2 did not apply and did not supersede the other regulations on the facts of this case. The second and third of these contentions depend on the seemingly simple question whether the specific location from which Mariano fell qualified as a floor opening (§ 1632, subd. (b)(1)) and/or a stairwell (§ 1626, subd. (a)(2)), or instead an "unprotected side[] or edge[]" (§ 1716.2, subd. (f)).

We affirm. We conclude the Appeals Board properly allowed the Division to amend the citation, the Appeals Board reasonably deemed the location at issue to fall

---

[1] Further undesignated citations are to sections in title 8 of the California Code of Regulations.

within the scope of sections 1632 subdivision (b)(1) and 1626, subdivision (a)(2) and that determination was supported by substantial evidence, and the Appeals Board properly determined section 1716.2 did not apply.

## BACKGROUND

### *The Accident*

On August 20, 2016, plaintiff's employees were working in a subdivision called Highland Grove. Mariano worked for plaintiff and was on the crew working on unit number 49. At that location, a stairway had been built from the ground floor to the second floor. The U-shaped stairway consisted of three segments of stairs. The first segment was to the right as one entered the front door and led part way up from the ground floor. The second segment turned 90 degrees to the left of the first and continued upwards. The third again turned 90 degrees to the left and continued upward until it connected with the second floor. The lowest segment of stairs starting on the ground floor abutted the wall containing the entry door. As they constructed the stairs, plaintiff's employees also built wooden railings. After the floor on the second floor was covered with plywood decking, but before exterior walls were erected, workers assembled wooden railings around the open edges.

At the top of the stairs on the second floor, there was an L-shaped floor space leading away from the stairs and then perpendicularly 90 degrees to the left. Wooden railings or handrails on each of the two sides were erected after the flooring was put down, one along the landing at the stop of the stairs and another extending perpendicularly to the left for several feet until it met the framing of a wall. But for the railing extending to the left, the floor would have led into an open space above the interior area of the house's ground floor. At least one witness referred to that railing

3

alternately as a railing and a wall.[2] Testimony indicated that, at some point, that railing was to be replaced with, or perhaps completed as, a short interior wall approximately 36 inches high. Once completed, one would be able to see the house's "volume ceiling" from the second-floor "bonus room" over that short wall.

On the day of the accident, Mariano was on the second floor doing wall installation. The workers removed the railing or handrail that was where the short wall would ultimately be erected because they were working on an exterior wall which they had to lay down on the floor of the bonus room in order to work on it. It would not fit on the floor with the handrail in place.

Mariano was "chalking the strap line with his back towards the unguarded stairwell (inaudible) and he fell to the [first] floor." Mariano fell 10 feet four inches to the concrete floor on the ground floor below. He sustained a brain injury characterized as a serious injury.

*The Division Issues Citations*

Ronald Aruejo, a senior safety engineer for the Division, issued plaintiff three general citations and one serious accident-related citation. Only the serious accident-related citation is at issue here.

Before issuing the serious accident-related citation, Aruejo sent a notice of intent. The notice of intent, Cal/OSHA form 1BY (1BY), cited an alleged violation of one of the Division's Construction Safety Orders. (§ 1502 et seq.) Specifically, the 1BY alleged a violation of section 1626, subdivision (a)(2), although it also stated the alleged violation

---

[2] Plaintiff insists this was not a railing but the framing of a short wall, and the fact that witnesses referred to it as a railing did not convert the skeletal framing of the short wall into a railing. Whether this structure was a temporary railing or the structural framing for a short wall ultimately is immaterial. The relevant issues are the definition of the space where the railing or wall was located and the fact that it was removed, leaving that space where Mariano fell unguarded.

"may be cited as a violation" of that section "or any other applicable regulation." The 1BY recited, in part: "[T]he employer did not provide railings and toe boards meeting the requirements of Article 16 around the stairwell of a story [*sic*] residential building under construction. As a result, an employee was seriously injured when he fell from the open side of the stairwell and landed approximately 11 feet below onto a concrete floor."

The subsequent citation itself set forth the following: "[T]he employer did not provide the exposed sides of a stairway with temporary railings and toe board as prescribed in Section 1620. As a result, an employee was seriously injured when he fell from the exposed side of the stairway and landed approximately 11 feet below onto a concrete floor." The citation cited section 1626, subdivision (a)(5). According to Aruejo, the language in the citation was from section 1626, subdivision (b)(5), and the reference to a nonexistent subdivision (a)(5) was a typographical error. The citation sets forth verbatim the language appearing in section 1626, subdivision (b)(5). That subdivision provides: "Unprotected sides and edges of stairway landings shall be provided with railings. Design criteria for railings are prescribed in Section 1620 of these safety orders." (§ 1626, subd. (b)(5).)

Plaintiff appealed the citation. A hearing before an ALJ followed. The hearing occurred over four days, November 14 and 15, 2017, and September 5 and 6, 2018.

On the first day of the hearing, the ALJ granted the Division's request to amend the citation to refer to section 1626, subdivision (b)(5) rather than nonexistent subdivision (a)(5). In July 2018, the Division moved to amend the citation to allege, in the alternative, a violation of section 1632, subdivision (b)(1). That section provides: "Floor, roof and skylight openings shall be guarded by either temporary railings and toeboards or by covers." (§ 1632, subd. (b)(1).) The ALJ denied the motion.

In its post-hearing brief, the Division again sought to amend the citation, this time to conform to the evidence and allege violation of section 1626, subdivision (a)(2). That section provides: "Railings and toeboards meeting the requirements of Article 16 of

5

these safety orders shall be installed around stairwells." (§ 1626, subd. (a)(2).) The Division asserted: "[T]he Division's 1BY notice cited [plaintiff] for a violation of section 1626[, subdivision](a)(2) and [plaintiff] has argued vigorously that the unprotected edge was not a stairwell. [Citation.] Thus, [plaintiff] had an opportunity to defend itself against this allegation and cannot claim surprise." The Division also argued the 15-foot trigger height for fall protection in section 1716.2 did not apply to interior unprotected sides and edges.

*The ALJ's Determination*

The ALJ determined the Division failed to establish plaintiff violated section 1626, subdivision (b)(5), finding that section inapplicable to the circumstances. Accordingly, the ALJ dismissed the citation and vacated the penalty. The ALJ also denied the Division's post-hearing request to amend the citation to conform to the proof and to allege a violation of section 1626, subdivision (a)(2).

*The Appeals Board's Decision After Reconsideration*

The Division filed a petition for reconsideration with the Appeals Board. Among the enumerated issues to be presented, the Division included: [¶] "Was the unguarded side from which Mariano fell the side of a stairway landing?"; [¶] "Was the unguarded side from which Mariano fell the side of a stairwell?"; [¶] "Was the unguarded side from which Mariano fell a floor opening?"; [¶] "Did the ALJ abuse her discretion in denying the Division's motion to amend Citation 2, Item 1 brought 41 days before the date of the continued hearing?"; and "Did the ALJ abuse her discretion in declining to amend under § 386?"

Plaintiff filed an answer to the Division's petition for reconsideration. Among other things, plaintiff asserted the Division should not be permitted to amend to allege additional violations, particularly after commencement of the hearing. Plaintiff also argued the location from which Mariano fell was neither a floor opening nor a stairwell. While plaintiff had notice the Division challenged both the ALJ's denial of its requests to

6

amend and the merits of the proposed amendments, plaintiff did not seek leave to reopen the hearing or present additional evidence.

In its decision after reconsideration, the Appeals Board upheld Citation 2 as amended. The Appeals Board agreed with the ALJ that the area from which Mariano fell was not a stairway landing and therefore concluded plaintiff did not violate section 1626, subdivision (b)(5), which served as the original basis for Citation 2 after it was amended by the ALJ to correct the typographical error.

However, the Appeals Board concluded the ALJ erred in denying the Division's mid-hearing motion to amend Citation 2 to plead in the alternative a violation of section 1632, subdivision (b)(1). The Appeals Board concluded plaintiff failed to demonstrate prejudice. Resorting to dictionary definitions of the term "opening" (§ 1632, subd. (b)(1) ["Floor, roof and skylight openings shall be guarded by either temporary railings and toeboards or by covers"]), the Appeals Board concluded Mariano fell through what could be characterized as a floor opening which was unguarded and unprotected in violation of section 1632, subdivision (b)(1). Therefore, the Appeals Board overruled the ALJ, granted the motion to amend, and upheld the violation on this basis.

The Appeals Board further concluded the ALJ erred in denying the Division's post-hearing motion to amend.[3] The Appeals Board concluded there was no evidence of

---

[3] For the first time in its reply brief, plaintiff contends the Appeals Board's analysis as to amendment was erroneous because it concluded the ALJ *erred* in denying amendment, whereas the proper standard is *abuse of discretion*. " ' "Obvious considerations of fairness in argument demand that the appellant present all . . . points in the opening brief. To withhold a point until the closing brief would deprive the respondent of [the] opportunity to answer it or require the effort and delay of an additional brief by permission. Hence the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before." ' " (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764, quoting *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8; accord, *Allen v. City of*

bad faith. The Appeals Board acknowledged the failure to cure a deficiency "at prior allowances to amend" could be deemed to weigh in plaintiff's favor. The Appeals Board found plaintiff failed to demonstrate prejudice, and further overruled its own prior case law to the extent it could be read as suggesting undue delay alone may be sufficient to warrant denial of a motion to amend. Finally, the Appeals Board found that the ALJ erred in concluding that the amendment would have been futile. In addressing the merits of the amendment, the Appeals Board found plaintiff's definition of "stairwell," derived from the Construction Dictionary, to be too narrow, noting that other dictionaries defined the term more broadly. The Appeals Board also emphasized that the Occupational Safety and Health Act of 1973 was enacted "for the purpose of assuring safe and healthful working conditions for all California workers." The Appeals Board accepted the Division's broader definition of the term stairwell. Having found the location from which Mariano fell constituted a stairwell, the Appeals Board granted amendment and further upheld the violation on this basis as well.[4]

*Denial of Petition for a Writ of Mandate and Appeal*

Plaintiff filed a petition for a writ of mandate pursuant to Code of Civil Procedure section 1094.5 in the trial court, seeking to have the Appeals Board's decision after reconsideration set aside. After oral argument, the trial court denied the petition. Plaintiff timely appealed.

---

*Sacramento* (2015) 234 Cal.App.4th 41, 52.) In the absence of any showing of good cause, we decline to address this contention.

[4] We note that, the Appeals Board having granted the post-hearing motion to amend, Citation 2 thus included an allegation of violation of section 1626, subdivision (a)(2), mirroring the Division's original 1BY notice of intent.

# DISCUSSION

## I

### *Request for Judicial Notice*

The Appeals Board filed a motion requesting that we take judicial notice of Appeals Board decisions appended to its motion. The decision on the request for judicial notice was deferred pending calendaring and assignment of the panel.

The Appeals Board's decisions after reconsideration are precedential; they establish the Appeals Board's official policy. (*Davey Tree Surgery Co. v. Occupational Safety & Health Appeals Bd.* (1985) 167 Cal.App.3d 1232, 1243 [Board counters that cases cited by appellant were decided by ALJs and were not, with exceptions, reviewed by Board, the decisions of which after reconsideration establish official Board policy].) The trial court considered a number of these decisions in its order denying plaintiff's petition for a writ of mandate.

We grant the Appeals Board's unopposed request for judicial notice. (Evid. Code, §§ 452, subd. (c), 459.)

Plaintiff also cites to the Appeals Board decisions in its briefing, including decisions not the subject of the Appeals Board's request for judicial notice, but plaintiff did not file a request for judicial notice of its own. We note California courts routinely cite Appeals Board decisions. (See, e.g., *Elsner v. Uveges* (2004) 34 Cal.4th 915, 930; *Rick's Electric, Inc. v. Occupational Safety & Health Appeals Bd.* (2000) 80 Cal.App.4th 1023, 1034, 1037; *Overaa Construction v. California Occupational Safety & Health Appeals Bd.* (2007) 147 Cal.App.4th 235, 241, 247, fn. 18 (*Overaa Construction*); *Davey Tree Surgery Co. v. Occupational Safety & Health Appeals Bd., supra*, 167 Cal.App.3d at pp. 1241-1242.) We further note that, as a reviewing court, we "shall take judicial notice of . . . each matter properly noticed by the trial court . . . ." (Evid. Code, § 459, subd. (a).) While the better practice would have been for plaintiff to file its own request for

9

judicial notice, on our own motion, we take judicial notice of all Appeals Board decisions cited by the parties. (Evid. Code, §§ 452, subd. (c), 459, subd. (a).)

## II

### *Standard of Review*

The review by a court considering a petition for a writ of mandate challenging an Appeals Board decision "shall not be extended further than to determine, based upon the entire record which shall be certified by the appeals board, whether: [¶] (a) The appeals board acted without or in excess of its powers. [¶] (b) The order or decision was procured by fraud. [¶] (c) The order or decision was unreasonable. [¶] (d) The order or decision was not supported by substantial evidence. [¶] (e) If findings of fact are made, such findings of fact support the order or decision under review. [¶] Nothing in this section shall permit the court to hold a trial de novo, to take evidence, or to exercise its independent judgment on the evidence." (Lab. Code, § 6629; see *Overaa Construction, supra*, 147 Cal.App.4th at p. 245.) "The findings and conclusions of the appeals board on questions of fact are conclusive and final and are not subject to review. Such questions of fact shall include ultimate facts and the findings and conclusions of the appeals board." (Lab. Code, § 6630.)

" ' "Our function on appeal is the same as that of the trial court in ruling on the petition for the writ. We must determine whether based on the entire record the [Appeals] Board's decision is supported by substantial evidence and whether it is reasonable. [Citations.] Where the decision involves the interpretation and application of existing regulations, we must determine whether the administrative agency applied the proper legal standard. [Citation.] Since the interpretation of a regulation is a question of law, while the administrative agency's interpretation is entitled to great weight, the ultimate resolution of the legal question rests with the courts . . . . An agency's expertise with regard to a statute or regulation it is charged with enforcing entitles its interpretation of the statute or regulation to be given great weight unless it is clearly erroneous or

10

unauthorized.  [Citations.]  The [Appeals] Board is one of those agencies whose expertise we must respect.  [Citation.]"  [Citation.]  However, "[a]n administrative agency cannot alter or enlarge the legislation, and an erroneous administrative construction does not govern the court's interpretation of the statute." ' "  (*Overaa Construction, supra*, 147 Cal.App.4th at pp. 244-245.)

## III

### *Amendment of Citation*

*A.      Plaintiff's Contentions*

Plaintiff asserts the trial court erred in permitting the Appeals Board to amend the citation.  Plaintiff asserts the Appeals Board ultimately found a violation based on two regulations that were not correctly pled.  According to plaintiff, in doing so, the Appeals Board created exceptions to Labor Code sections 6317 and 6432 and thus engaged in "underground regulation" by creating a definition for a regulatory term without complying with the Administrative Procedure Act (Gov. Code, § 11340 et seq.).  Plaintiff challenges (1) the Division's ability to plead more than one violation in the alternative, (2) the mid-hearing amendment, and (3) the post-submission amendment.

B.      *Authority for Amendments Generally*

The Labor Code provides that the "rules of practice and procedure adopted by the appeals board shall be consistent with," among other things, Government Code section 11507.  (Lab. Code, § 6603.)  Government Code section 11507 provides, in part:  "At any time before the matter is submitted for decision, the agency may file, or permit the filing of, an amended or supplemental accusation . . . ."  Thus, Government Code section 11507 contemplates amendments to accusations, and, pursuant to Labor Code section 6603, the rules of practice adopted by the Appeals Board shall be consistent with that provision.

Section 371.2, a "rule[] of practice and procedure adopted by the appeals board" (Lab. Code, § 6603), expressly addresses amendments of a citation or appeal.  Among other things, it provides that a "request for an amendment that does not cause prejudice to

11

any party may be made by a party or the Appeals Board at any time." (§ 371.2, subd. (a)(1).)

Labor Code section 6603 also requires the "rules of practice and procedure adopted by the appeals board" to be consistent with Government Code section 11516. That section authorizes amendment of an accusation "after submission of the case for decision." (Gov. Code, § 11516.)

Section 386, subdivision (a) provides: "The Appeals Board may amend the issues on appeal or the Division action after a proceeding is submitted for decision." Thus, as a general matter, post-submission amendments are authorized. In fact, "amendments at trial to conform to proof, 'if not prejudicial, are favored since their purpose is to do justice and avoid further useless litigation.' " (*Garcia v. Roberts* (2009) 173 Cal.App.4th 900, 909.)

C.     *Pleading in the Alternative*

Plaintiff asserts pleading multiple, alternative violations is prohibited under the Labor Code. Contrary to plaintiff's contentions, the Division has the option to plead in the alternative. (*MTM Builders, Inc.* (Cal. OSHA, June 12, 2020, No. 1101230) 2020 CA OSHA App.Bd. Lexis 78, at p. *5 ["the Division failed to exercise its option, which it has exercised in numerous other instances, effectively to plead in the alternative"].) This is consistent with the modern practice in courts. (See *Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1402 ["When a pleader is in doubt about what actually occurred or what can be established by the evidence, the modern practice allows that party to plead in the alternative and make inconsistent allegations"].)

Allowing pleading in the alternative is also consistent with interpretation of the federal Occupational Safety and Health Act. (See *Alcala v. Western Ag Enterprises* (1986) 182 Cal.App.3d 546, 550 ["It has been held that when California's laws are patterned on federal statutes, federal cases construing those federal statutes may be looked to for persuasive guidance"]; see also *Lujan v. Minagar* (2004) 124 Cal.App.4th

1040, 1045 [Cal-OSHA is patterned after federal counterpart].) As the Ninth Circuit stated concerning alternative pleading in OSHA cases: "Nor does pleading in the alternative render the amended complaint insufficiently particular. . . . It helps avoid complications or delays which are contrary to the goal of fair and speedy enforcement of the Act." (*Donovan v. Royal Logging Co.* (9th Cir. 1981) 645 F.2d 822, 828-829.)

Plaintiff asserts the Appeals Board in permitting alternative allegations created exceptions to Labor Code section 6317 and thus engaged in under underground regulation. Plaintiff relies on the language of that section providing that "[e]ach citation shall be in writing and shall describe with particularity the nature of the violation, including a reference to the provision of the code, standard, rule, regulation, or order alleged to have been violated," emphasizing that "citation" and "provision" appear in the singular form.

Labor Code section 6317 does not address, or prohibit, amendment of citations. And, as addressed above, pleading in the alternative is permitted. (*MTM Builders, Inc., supra*, 2020 CA OSHA App.Bd. Lexis 78.) Additionally, as the Appeals Board notes, in construing the Labor Code, "[t]he singular number includes the plural, and the plural the singular." (Lab. Code, § 13.)

Nor are we persuaded by plaintiff's reliance on Labor Code section 6432. Subdivision (b)(2) of that section provides, in part: "The division shall satisfy its requirement to determine and consider the facts specified in paragraph (1) if, not less than 15 days prior to issuing a citation for a serious violation, the division delivers to the employer a standardized form containing the alleged violation descriptions ('AVD') it intends to cite as serious and clearly soliciting the information specified in this subdivision." We do not find anything in this section 6432 that would prohibit amendment or pleading in the alternative. Moreover, that section contains an express provision providing: "The trier of fact may also draw a negative inference from factual information offered at the hearing by the division that is inconsistent with factual

13

information provided to the employer pursuant to subdivision (b), or from a failure by the division to provide the form setting forth the descriptions of the alleged violation and soliciting information pursuant to subdivision (b)." (Lab. Code, § 6432, subd. (d).) That subdivision does not provide the Division is barred outright from offering inconsistent factual information or failing to provide the form setting forth the alleged violation; it provides the option of drawing a negative inference against the Division under such circumstances. And we note the factual allegations asserted here always remained the same.

D.     *Mid-hearing Amendment*

"[A]mendments to pleadings in the administrative hearing context are liberally allowed." (*Calstrip Steel Corporation* (Cal. OSHA, June 30, 2017, Nos. 12-R3D6-1998, 1999) 2017 CA OSHA App.Bd. Lexis 66 at p. *15.) "A request for an amendment that does not cause prejudice to any party may be made by a party or the Appeals Board at any time." (§ 371.2, subd. (a)(1).) "When considering a request to amend, courts, and the Board, will examine bad faith of the parties, failure to cure deficiencies at prior allowances to amend, the futility of an amendment, and prejudice." (*Calstrip Steel Corporation*, *supra*, 2017 CA OSHA App.Bd. Lexis 66 at pp. *16-17.) "As to a claim of prejudice, the showing must demonstrate that the party was 'unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely.' " (*Calstrip Steel Corporation*, *supra*, 2017 CA OSHA App.Bd. Lexis 66 at p. *17, quoting *Dole v. Arco Chemical Co.* (3d Cir. 1990) 921 F.2d 484, 488.) "Prejudice will not be presumed but must be affirmatively demonstrated through production of evidence." (*Sierra Forest Products* (Cal. OSHA, Apr. 8, 2016, No. 09-R2D5-3979) 2016 CA OSHA App.Bd. Lexis 28 at p. *7.)

There is no indication of bad faith in the record or any specific allegations in plaintiff's briefs. Nor do the parties address in any substantive way the failure to cure deficiencies at prior allowances to amend.

14

With regard to prejudice, plaintiff asserted it had been denied notice of the violation because the citation "did not reference <u>any indication</u> of a charged violation of . . . [section] 1632[, subdivision ](b)(1)," and there was "<u>no indication</u> that [plaintiff] had failed to guard a 'floor opening' in violation of" that section, and did not reference any "floor opening." As a result, plaintiff asserted it was "too late to prepare a defense." Plaintiff also emphasized the passage of time since the accident and the fact that discovery had been completed. According to plaintiff, all of its resources had gone towards investigating and defending against the original citation, and plaintiff further asserted it would be required to expend more resources to develop a defense against an amended citation. In this regard, plaintiff emphasized faded memories of witnesses and witness unavailability.

As the Appeals Board notes, the proposed amendment did not seek to change the factual description of the alleged violation. Instead, it sought to plead, in the alternative and based on all of the same facts, that plaintiff failed to protect the sides and edges of a "stairway landing[]" (§ 1626, subd. (b)(5)), and, through the amendment, that plaintiff failed to guard a "[f]loor . . . opening[]" (§ 1632, subd. (b)(1)). In other words, through the amendment, and based on all of the same facts, the Division sought to proceed pursuant to the theory that the removal of the railing resulted in an unprotected stairway landing, or, in the alternative, on the theory that it resulted in an unguarded floor opening. With regard to amending a pleading, "[i]f the same set of facts supports merely a different theory . . . no prejudice can result." (*Garcia v. Roberts, supra*, 173 Cal.App.4th at p. 910.) We conclude plaintiff failed to establish it would be prejudiced by this amendment.

Finally, as for futility, we conclude, *post*, that the Appeals Board properly found a violation of section 1632, subdivision (b)(1). As such, it cannot be said that amendment to add a violation of that section would have been futile.

E.    *Post-submission Amendment*

Considering the same factors addressed in part II.D as to the request to amend post-submission pursuant to section 386 to allege a violation of section 1626, subdivision (a)(2), we first note, again, there is no indication of bad faith and plaintiff does not assert there is.  And again, the parties do not address failure to cure deficiencies at prior allowances to amend.

Moreover, under the heading addressed to amendment of the citation, plaintiff does not advance a substantive argument addressing prejudice beyond emphasizing the passage of time.  Instead, plaintiff largely recites the procedural background and argues amendment was statutorily prohibited and amendment to plead in the alternative should not be permitted.  Plaintiff also emphasizes the consequences of having a serious violation on its record, which is not germane to prejudice in the context of whether amendment should be granted.  Plaintiff in its opening brief only mentions prejudice once in quoting the ALJ and a second time in asserting, in conclusory fashion, that, "[b]y definition, the [Appeals] Board's finding prejudiced" plaintiff.[5]

Particularly in the context of a post-hearing request to amend to conform to the proof, the proposed amendment necessarily did not involve any different facts.  Instead, it sought to prove a violation that plaintiff failed to install, or keep installed under the

---

[5] Plaintiff asserts the Appeals Board held that plaintiff "did not *disprove* the violations it found, and that they were 'fully litigated,' " and contends the Appeals Board "essentially reversed the burden of proof."  It is not clear to what portion of the Appeals Board decision after reconsideration plaintiff is referring because plaintiff has not provided a record citation.  The Appeals Board stated the "Division proved Employer violated Citation 2, Item 1 based on both section 1632, subdivision (b), and section 1626, subdivision (a)(2)."  In any event, plaintiff does not make this claim under separate heading or subheading, does not cite to the record, and does not cite any authority beyond that standing for the general proposition that the Division bears the burden of proof.  (See Cal. Rules of Court, rule 8.204(a)(1)(B).)  Accordingly, we need not address this contention further.

circumstances here, a railing or toeboard around a stairwell (§ 1626, subd. (a)(2)) as an alternative to the theory that plaintiff failed to protect the sides and edges of a stairway landing (§ 1626, subd. (b)(5)). In its opening statement, the Division addressed stairwells, landings, and floor openings. Plaintiff countered by stating there was no stairwell involved. The parties argued the correct interpretation of stairwell. There was testimony specifically about the use of the term stairwell, whether a witness would consider a particular area to be a stairwell, and definitions of the term stairwell. Plaintiff's attorney stated at the hearing that "the stairwell and the edge of the stairwell and a stairway have particular meanings that are critical to this case." Plaintiff's counsel later stated the "issue was whether or not this is the railing that's shown as number four [in] the Division's [photographic] Exhibit 3 is actually part of the stairwell or the stairway." We conclude there was no indication of prejudice from this issue involving a theory that was actually litigated. (*Sierra Forest Products, supra*, 2016 CA OSHA App.Bd. Lexis 28 at. p. *7, quoting *Conolley v. Bull* (1968) 258 Cal.App.2d 183, 193 [" 'It is established . . . that if a case is actually tried on the theory which is later added by an amendment to the pleadings, the adverse party suffers no prejudice from the variance' "].)

Lastly, because we conclude, *post*, the Appeals Board properly found a violation of section 1626, subdivision (a)(2), it cannot be said the post-hearing amendment to conform the pleading to the proof would have been futile.

IV

### *Applicability of Sections 1626, Subdivision (a)(2) and 1632, Subdivision (b)(1)*

A.     *Plaintiff's Contentions*

Plaintiff asserts the sections under which the Appeals Board, and the trial court, upheld violations, sections 1626, subdivision (a)(2) and 1632, subdivision (b)(1), did not apply to where Mariano fell, "the edge of the bonus room's floor . . . ." Plaintiff asserts the Appeals Board "created an ambiguity in the regulations by erroneously concluding

17

that the bonus room floor edge was a 'stairwell.' " Plaintiff argues the Appeals Board and the Division incorrectly deemed the *perimeter edge* of the bonus room to be a *floor opening* through which someone could fall. As will be discussed in greater detail *post* and in part V of the Discussion, plaintiff asserts section 1716.2, subdivision (f) is the applicable regulation. That regulation requires fall protection "around all unprotected sides or edges" for work performed on floors that will later be enclosed by framed exterior walls, but only when the work is performed more than 15 feet above the floor level below. (§ 1716.2, subd. (f).) The fall here was less than 11 feet to the concrete floor below.

Ultimately, the question presented is straightforward, even if the answer to that question is less so: Did the location from which Mariano fell constitute a stairwell within the meaning of section 1626, subdivision (a)(2) and/or a floor opening within the meaning of section 1632, subdivision (b)(1)? We conclude it did on both counts.

B.      *Regulatory Interpretation and Substantial Evidence*

" 'The interpretation of a regulation, like the interpretation of a statute, is, of course, a question of law' and is therefore subject to our de novo review. [Citation.] Accordingly, while an administrative agency's interpretation of its own regulation is entitled to deference appropriate to the circumstances, 'the ultimate resolution of such legal questions rests with the courts.' [Citations.] When interpreting an administrative regulation, we follow the same rules of construction that apply to statutes. [Citation.] Thus, our fundamental objective is to ascertain and effectuate the intent of the agency issuing the regulation. [Citations.] [¶] In determining the issuing agency's intent, we look first to the language of the regulation itself. [Citation.] ' "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the [agency] . . . ." [Citation.] "But the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a [regulation] comports with its purpose . . . ." [Citation.] Furthermore, " 'where a word of common usage has

more than one meaning, the one which will best attain the purposes of the [regulation] should be adopted, even though the ordinary meaning of the word is thereby enlarged or restricted and especially in order to avoid absurdity or to prevent injustice.' " ' [Citations.]  Moreover, '[w]e do not construe a regulation in isolation, but instead read it with reference to the scheme of law of which it is a part, so that the whole may be harmonized and retain effectiveness.' [Citations.]  Finally, when an examination of regulatory language in its proper context fails to resolve an ambiguity, courts may 'turn to the [regulatory] history of an enactment as an aid to its interpretation.' " (*Department of Industrial Relations v. Occupational Safety & Health Appeals Bd.* (2018) 26 Cal.App.5th 93, 100-101 (*Department of Industrial Relations*).)

As stated *ante*, " ' "[a]n agency's expertise with regard to a statute or regulation it is charged with enforcing entitles its interpretation of the statute or regulation to be given great weight unless it is clearly erroneous or unauthorized.  [Citations.]  The [Appeals] Board is one of those agencies whose expertise we must respect." ' " (*Overaa Construction, supra*, 147 Cal.App.4th at pp. 244-245.)

"On appeal we must resolve evidentiary conflicts in favor of the prevailing party, and view the evidence, drawing all reasonable inferences, in the light most favorable to [the prevailing party].  So long as the whole record so viewed reveals in support of the judgment evidence of ponderable legal significance, i.e., evidence which is reasonable, credible, and of solid value, we must affirm." [6] (*Gaehwiler v. Occupational Safety & Health Appeals Bd.* (1983) 141 Cal.App.3d 1041, 1045, fn. 2.)

---

[6] The Appeals Board asserts plaintiff waived any substantial evidence challenge.  " 'An appellant challenging the sufficiency of the evidence to support the judgment must cite the evidence in the record supporting the judgment and explain why such evidence is insufficient as a matter of law.' [Citation.]  Failure to discuss contrary evidence waives any argument the judgment is not supported by substantial evidence." (*Antelope Valley Groundwater Cases* (2021) 63 Cal.App.5th 17, 53, fn. 16.)  Even if we could deem a

19

C.      *Section 1632, Subdivision (b)(1)*

Again, section 1632, subdivision (b)(1) provides:  "Floor, roof and skylight openings shall be guarded by either temporary railings and toeboards or by covers." Section 1632 does not define the term "floor opening," and no such definition appears in section 1504, the relevant definitions section.  Section 1504 does define the term "[o]pening" as an "opening in any floor or platform, 12 inches or more in the least horizontal dimension.  It includes:  stairway floor openings, ladderway floor openings, hatchways and chute floor openings."  (§ 1504.)  The Appeals Board found this definition ambiguous and resorted to dictionary definitions of the term "opening."  (See *Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121-1122 ["When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word"]; *Hammond v. Agran* (1999) 76 Cal.App.4th 1181, 1189 ["in the absence of specifically defined meaning, a court looks to the plain meaning of a word as understood by the ordinary person, which would typically be a dictionary definition"].)

The dictionary definitions of "opening" upon which the Appeals Board relied included "a hole or empty space through which things or people can pass" (Collins Dict. Online <https://www.collinsdictionary.com/us/dictionary/english/opening> [as of June 22, 2023], archived at:  <https://perma.cc/B9AB-RJ8E>); "a hole or space that something or someone can pass through" (Cambridge Dict. Online < https://dictionary.cambridge.org/us/dictionary/english/opening> [as of June 22, 2023], archived at:  < https://perma.cc/Z7Y3-8ELE >); and "a void in solid matter; a gap, hole, or aperture" (Dictionary.com <https://www.dictionary.com/browse/opening> [as of June 22, 2023], archived at:  <https://perma.cc/522X-NLG8>).

---

substantial evidence challenge forfeited, we address plaintiff's contentions on their merits.  (See *ibid*.)

The Appeals Board then concluded that, when plaintiff's workers removed the railing, they "create[ed] a hole or empty space from which people or things could fall through." The Appeals Board continued: "Mariano fell through the opening, which was unguarded and unprotected contrary to section 1632, subdivision (b)(1)'s mandate." (Fn. omitted.)

We conclude the Appeals Board's construction and interpretation of section 1632, subdivision (b)(1) comports with the plain meaning of the terms used in that provision. Specifically, in our de novo review of the interpretation of the regulation (see *Department of Industrial Relations, supra*, 26 Cal.App.5th at p. 100), we agree with the construction of the term opening utilized by the Appeals Board, informed by dictionary definitions.

As for the evidence supporting the violation of that section, we have reviewed the hearing testimony. We have also examined the photographic exhibits depicting the site of the accident. At the top of the stairs on the second floor of the house where the accident occurred, an L-shaped floor space led away from the stairs and then perpendicularly to the left. Wooden railings or handrails on each of the two sides were erected after the flooring was put down, one along the landing at the stop of the stairs and another extending to the left for several feet until it met the framing of a wall. But for the railing to the left of and perpendicular to the topmost group of stairs, the floor would have led into open space above the ground floor. This is the location from which Mariano fell. Testimony indicated that this railing farther from, and perpendicular to, the stairs was to be replaced with, or perhaps completed as, a short interior wall approximately 36 inches high. Once completed, one would be able to see the house's "volume ceiling" from the second-floor "bonus room" over that short wall. And, of course, prior to Mariano's fall, this railing had been removed.

We conclude substantial evidence supports the Appeals Board's determination that the location from which Mariano fell can be characterized as an unguarded floor opening within the meaning of section 1632, subdivision (b)(1). Nothing in the definitions

21

utilized by the Appeals Board restricted the concept of a floor opening in such a manner as to render that term inapplicable to the configuration here. We conclude the Appeals Board properly upheld the violation under this section.

We note that, "in the particular context of workplace health and safety here at issue, our high court has reviewed the statutory structure and—noting that the relevant provisions 'speak in the broadest possible terms'—has concluded that 'the terms of the legislation are to be given a liberal interpretation for the purpose of achieving a safe working environment.' " (*Department of Industrial Relations, supra*, 26 Cal.App.5th at p. 106, quoting *Carmona v. Division of Industrial Safety* (1975) 13 Cal.3d 303, 312, 313 (*Carmona*); see also Lab. Code, § 6401 ["Every employer shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe and healthful. Every employer shall do every other thing reasonably necessary to protect the life, safety, and health of employees."]; Lab. Code, § 6307 [the Division "has the power, jurisdiction, and supervision over every employment and place of employment in this state, which is necessary adequately to enforce and administer all laws and lawful standards and orders, or special orders requiring such employment and place of employment to be safe, and requiring the protection of the life, safety, and health of every employee in such employment or place of employment"].)

Plaintiff repeatedly criticizes the Appeals Board and the trial court for what it characterizes as rewriting the regulations, reading into the regulations what the Standards Board omitted, and engaging in underground regulation. For example, plaintiff maintains that "[o]nly by distorting the straightforward regulatory language, inserting terms not included there, and inventing new meanings for construction terminology did the [Appeals Board] reach untenable conclusions, which the trial court implicitly adopted." However, the mere fact that the trial court, and we, disagree with plaintiff's preferred interpretation does not mean there has been improper circumventing of the appropriate

22

rulemaking process. It simply means we are persuaded the Appeals Board's conclusions are supported by the language of the regulations.

Plaintiff relies on *Cabrillo Economic Development Corp.* (Cal. OSHA, Oct. 16, 2014, No. 11-3185) 2014 CA OSHA App.Bd. Lexis 116 (*Cabrillo*), in asserting the Appeals Board in that case found that, while section 1632, subdivision (b)(1) applied to floor openings during framing operations, section 1716.2 applies to unprotected sides and edges.[7] It appears plaintiff's reliance on *Cabrillo* is for the premise that where Mariano fell was not "through" a floor opening like the one described in *Cabrillo*, but rather over an edge, such that only section 1716.2, subdivision (f) and its 15-foot trigger height would apply. We are not persuaded. In *Cabrillo*, the Appeals Board did determine that section 1632 applied to the stairwell floor opening through which the employee fell. (*Cabrillo*, *supra,* 2014 CA OSHA App.Bd. Lexis 116 at p. *9.) The Appeals Board articulated the employee "fell through" the stairway opening in which a stairway would eventually be installed. (*Cabrillo*, *supra,* 2014 CA OSHA App.Bd. Lexis 116 at p. *5 & fns. 5, 6, 11.) However, while plaintiff would prefer to characterize Mariano's fall as over an edge rather than through a floor opening, we are not persuaded that anything in *Cabrillo*, including the configuration of that floor opening, establishes the location here could not also qualify as a floor opening.

Plaintiff also relies on *Webcor Builders, Inc.* (Cal. OSHA, Jan. 11, 2010, No. 06-3030) 2010 CA OSHA App.Bd. Lexis 7. According to plaintiff, the Appeals Board in

---

[7] Subdivision (f) of section 1716.2 provides: "Work on Floors and Other Walking/Working Surfaces. When working on floors and other walking/working surfaces that will later be enclosed by framed exterior walls, employees directly involved with the layout and construction of framed stud walls shall be protected from falling by standard guardrails as specified in Section 1620 around all unprotected sides or edges, or by other means prescribed by CSO Article 24, Fall Protection, when the floor or walking/working surface is over 15 feet above the surrounding grade or floor level below."

*Webcor* "held that [section] 1632[, subdivision ](c) – ladderway <u>floor openings</u> or platforms shall be guarded . . . on all open sides – *does not apply* to the *perimeter of a building floor* because it did not lead to <u>or penetrate a floor</u> and by its terms applies where there is a danger of employees falling 'through' floor openings." The Appeals Board in *Webcor* stated: "By definition, the exterior end or edge of a building's floor is not an opening in that floor. Beyond that end or edge there is no floor in which an 'opening' can exist. This meaning is reinforced by the language of section 1632[, subdivision ](a), which is concerned with employees, *inter alia*, falling through a floor, not off it, as one would do at the edge." (*Webcor*, *supra,* 2010 CA OSHA App.Bd. Lexis 7 at p. *6.) Elsewhere, the Appeals Board noted of the subject location: "The ladder was placed on the outside or perimeter of the structure, and thus rested on or connected to the second floor at the exterior edge of that floor." (*Webcor*, *supra,* 2010 CA OSHA App.Bd. Lexis 7 at p. *5.) This is distinguishable from the circumstances here, involving an interior floor edge, or opening.

We conclude the Appeals Board's determination was supported by substantial evidence and was reasonable.

D.      *Section 1626, Subdivision (a)(2)*

Section 1626, subdivision (a)(2) provides: "Railings and toeboards meeting the requirements of Article 16 of these safety orders shall be installed around stairwells." Stairwell is not defined in section 1504.

The location where Mariano was at the time of his fall, the floor next to the opening over the ground floor, was not at the top of the stairs, but a number of feet to the side of the top landing of the stairs. According to John Wagner, plaintiff's witness, there was no part of the stairway in the area where Mariano landed on the concrete floor. He estimated the stairs were four to six feet beyond and opposite the wall directly below where Mariano was situated immediately before he fell. He also testified "the stair termination is beyond the volume ceiling area, and that vertical housing is limited to the

24

space that the stairs themselves occupy." Wagner did not consider the area from which the railing had been removed to be within the stairwell.

Conversely, Ronald Aruejo, the Division's witness, testified he considered the location where Mariano fell to be in the stairwell. Another Division witness, Joel Foss, testified a stairwell is "the well in which the stairs are." He also testified he agreed with an exhibit that had been submitted that provided a dictionary definition of "stairwell." That definition, plaintiff's exhibit T, entitled Construction Dictionary, defined "stairwell" as "[a] compartment extending vertically through a building in which stairs are placed." Foss testified he considered the stairwell to include "the entire space that was described as the foyer." Asked why he considered that entire space to be the stairwell, Foss testified: "Because it's part of that open space that is unguarded by surrounding walls. It's the – it's part of that open space. It presents the same fall hazard as other areas in that same open space." He acknowledged that the space was not limited to the vertical space directly over the three segments of stairs, but also included "all the other unguarded sides and edges other than the entry itself, the entry onto the stairs." Asked again why he included that area in his conception of the stairwell, whereas Wagner did not, Foss testified, "[b]ecause that side or edge abuts this same open space, the stairwell, the well where the stairs are, so it requires guarding." He again testified he considered the open area by the railing that was removed, where Mariano fell, to be part of the stairwell and part of the open area where the stairs were. He testified "[i]t's all the stairwell." He continued: "[T]he stairwell is this open space. It's not only this pillar of air above the stairs themselves. It's the space, the open space, in which the stairwell is situated." He testified that, unlike Wagner, he did not conceive of a stairwell as strictly limited to the area actually occupied by stairs.

The blueprint, which contained a mirror image of the floorplan, depicted the U-shaped stairs consisting of three segments beginning on the ground floor. The first

25

segment of stairs did not begin directly under the edge from which Mariano fell, but several feet opposite that location.

The Appeals Board in its Decision After Reconsideration considered dictionary definitions of "stairwell" other than that submitted by plaintiff, including "a long, vertical passage through a building around which a set of stairs is built" (Cambridge Dict. Online <https://dictionary.cambridge.org/us/dictionary/english/stairwell> [as of June 27, 2023], archived at: <https://perma.cc/BF7F-4LWG>); and "the vertical shaft or opening containing a stairway" (Dictionary.com <https://www.dictionary.com/browse/stairwell> [as of June 27, 2023], archived at: <https://perma.cc/HA9L-W73B>.) The Appeals Board stated plaintiff's "definition of stairwell, which is supported by the Construction Dictionary, is too narrow an interpretation of the term since other dictionaries define stairwell more broadly as a vertical shaft or opening that contains the stairway." In connection with this observation, the Appeals Board relied on the California Supreme Court's direction that "the terms of the legislation are to be given a liberal interpretation for the purpose of achieving a safe working environment." (*Carmona, supra*, 13 Cal.3d at p. 313.) The Appeals Board upheld the violation under section 1626, subdivision (a)(2) as well.

The Appeals Board precedents on which plaintiff relies are inapposite. They do not involve stairwells, which are the subject of section 1626, subdivision (a)(2). Instead, they involve "stairways" (*Davis Brothers Framing, Inc.* (Cal. OSHA, Apr. 8, 2010, No. 05-634) 2010 CA OSHA App.Bd. Lexis 46), and "fall protection" (*JD2 Incorporated* (Cal. OSHA, June 4, 2003, No. 02-2693) 2003 CA OSHA App.Bd. Lexis 71; *Schuck and Sons Construction Company*, (Cal. OSHA, Sept. 29, 1997, No. 92-1564) 1997 CA OSHA App.Bd. Lexis 1; *Reese Construction Company, A Corp.* (Cal. OSHA, Nov. 7, 1980, No. 78-1037) 1980 CA OSHA App.Bd. Lexis 32).

We conclude the Appeals Board's determination that this area could be considered a stairwell was reasonable and was supported by substantial evidence. It is supported by

the Division witnesses' testimony and exhibits as well as the dictionary definitions upon which the Appeals Board relied. Moreover, this conclusion finds further support in the direction that such provisions are construed liberally to provide protection and safety for workers. (*Carmona, supra*, 13 Cal.3d at p. 313; *Department of Industrial Relations, supra*, 26 Cal.App.5th at p. 106.)

## V

### *Section 1716.2*

Plaintiff asserts it was section 1716.2 that applied. Plaintiff asserts the trial court erred in affirming the Appeals Board's findings regarding inapplicability of section 1716.2 because those findings violate tenets of regulatory construction and depart from the plain meaning of the regulation's language. According to plaintiff, "[o]nly by distorting the straightforward regulatory language, inserting terms not included there, and inventing new meanings for construction terminology did the Respondent reach untenable conclusions, which the trial court implicitly adopted." Plaintiff asserts the Division cannot circumvent the proper rulemaking process by creating its own interpretation, and doing so constitutes underground regulation.

The Appeals Board and the Division respond that, contrary to plaintiff's contention that section 1716.2 controlled, more than one safety order may apply, and plaintiff did not show that section 1716.2 was both more specific than and in actual conflict with the sections under which it found violations such that the provisions could not be reconciled.

Section 1716.2, subdivision (f) applies in the context of framing and contains a 15-foot trigger height, below which the prescribed fall protections do not apply.[8] We agree with the Division's opinion that this provision gives rise to ambiguity as to whether it

---

[8] See footnote 10, *ante*.

"applies to the unprotected sides and edges around the *exterior* edges of a floor or working surface *later to be enclosed by framed exterior walls*, or whether i[t] appl[i]es to *all* edges including *interior* edges created by stairway landings, stairwells and floor openings."

Joel Foss testified the 15-foot trigger height "only applied to exterior opening -- the exterior fall hazard . . . .  So it only applied to where there were exterior walls stood up."

Based on Foss's testimony, section 1716.2 would not be implicated here, where the areas at issue were all on the interior of the structure.  In any event, even if this section were implicated, it would not supplant or supersede the other sections as we now discuss.

"It is not uncommon for more than one safety order to apply to a particular set of facts.  Applying principles of statutory construction, the [Appeals] Board will only find that a more specific safety order is controlling where there is an actual conflict between the two safety orders.  [Citation.]  Where it is possible to read the safety orders so that they are in harmony with one another, the [Appeals] Board will do so."  (*Cabrillo, supra*, 2014 CA OSHA App.Bd. Lexis 116 at p. *8.)

In *Cabrillo*, the employer asserted sections 1632, subdivision (b)(1) and 1716.2 were in conflict, the latter was more specific, and therefore it controlled.  Because *Cabrillo* addresses essentially the same issue as presented here, we quote it at length:

"Section 1632 applies to 'the static hazard of an existing opening', which creates both the danger of an employee accidentally walking into the hole, as well as debris sliding onto the lower level, injuring those who may be below.  [Citation.]  . . . [U]nlike section 1716.2[, subdivision ](f), 'in addition to fall protection, section 1632[, subdivision ](b) provides protection against other objects, such as tools, falling below the floor, roof, or skylight openings.'  By definition, the area where the employee fell was a stairwell floor opening.  [Citation.]  As such, section 1632 applies to the

28

opening. While there are overlapping purposes to the two safety orders, the hazards identified by the two orders are not identical, and create no direct conflict. The Board interprets safety orders in a manner consistent with the purpose of the Act, which is to achieve a safe working environment for all Californians. [Citation.]

"Section 1716.2[, subdivision ](f), which mandates use of guardrails or personal fall protection when framing work is being done over 15 feet, does not create any inherent conflict with the requirement to guard openings found in section 1632. There was no violation of the section, as the employee who fell was not required to wear fall protection at the height he was working at. Nor were the unprotected sides or edges of the building required to be guarded, as the framing was not being done at a height over 15 feet. However, section 1632[, subdivision ](b)(1), which applies to stairwell openings, includes no such height trigger, nor does it exclude framing work from its mandate; the Division properly alleged a violation of this safety order, and the Board finds a violation.

"While the Board recognizes that interpreting the safety orders is not always a simple task, in this instance compliance with the terms of section 1632[, subdivision ](b)(1) by covering or guarding floor openings does not prevent an employer from also complying with section 1716.2. It is both possible, and reasonable, to give concurrent effect to both safety orders. [Citation.] Only where there is an actual conflict between the orders will a more specific safety order control over the more general; that not being shown in this instance, Employer's defense therefore fails. [Citation.]

"Additionally, the Board is not convinced that section 1716.2[, subdivision ](f) is more specific than section 1632[, subdivision ](b)(1). Section 1632[, subdivision ](b)(1) requires guarding of '[f]loor, roof and skylight openings . . . .' Section 1504 defines 'opening' to include 'stairway floor openings.' In short, section 1632[, subdivision ](b)(1) specifically pertains to protecting stairway floor openings such as the one that Martinez fell through. In contrast, section 1716.2[, subdivision ](f) requires guardrails (or other appropriate protection) around 'all unprotected sides or edges . . .' over fifteen

feet in height during framing activities. The latter regulation appears to be a more-generalized guideline, applicable during the framing process, whether the working floor contains openings or not, and does not specifically address the floor opening hazard. Under the circumstances of this case, we conclude there is no conflict among the two regulations, and so Employer must comply with both." (*Cabrillo, supra*, 2014 CA OSHA App.Bd. Lexis 116 at pp. *9-12.)

For the reasons expressed in *Cabrillo*, we conclude section 1716.2 did not conflict with either section 1632, subdivision (b)(1) or, based on the same reasoning, section 1626, subdivision (a)(2).

Plaintiff again maintains that the Appeals Board's determinations amount to underground regulation and, under a separate point heading entitled, "Consequences of Respondent's and Lower Court's Rulings," asserts this creates a separation of powers issue and further asserts, with examples, the Appeals Board's "findings leave more questions than answers." (Bold and some capitalization omitted.) We disagree. While we acknowledge that, going forward, as before, "interpreting the safety orders is not always a simple task . . ." (*Cabrillo, supra*, 2014 CA OSHA App.Bd. Lexis 116 at p. *10.) We conclude the Appeals Board here merely interpreted the subject regulations, as opposed to effectively rewriting them, and its interpretations were reasonable.

## DISPOSITION

The judgment is affirmed.  The Appeals Board and the Division shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


                                          /s/
                                       HORST, J.*


We concur:


      /s/
RENNER, Acting P. J.


      /s/
BOULWARE EURIE, J.

---

*  Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| L & S FRAMING INC., | C096386 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV0046603) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| CALIFORNIA OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD, | |
| Defendant and Respondent; | |
| CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS, | |
| Real Party in Interest and Respondent. | |

THE COURT:

The opinion in the above-entitled matter filed on June 29, 2023, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

32

FOR THE COURT:


_____/s/_____
RENNER, Acting P. J.


_____/s/_____
BOULWARE EURIE, J.


_____/s/_____
HORST, J.*

---

\*  Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

EDITORIAL LISTING

APPEAL from a judgment of the Superior Court of Placer County, Trisha J. Hirashima, Judge.  Affirmed.

Donnell, Melgoza & Scates LLP, Manuel M. Melgoza for Plaintiff and Appellant.

J. Jeffrey Mojcher, Aaron R. Jackson, F. Elizabeth Clarke and Vincent Mersich for Respondent California Occupational Safety and Health Appeals Board.

Denise M. Cardosa, Deborah A. Bialosky and Clara Hill-Williams for Real Party in Interest and Respondent California Department of Industrial Relations.