Filed 10/1/24  Scarborough v. City of Lancaster CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| AMANDA JOLENE-REBECCA SCARBOROUGH et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>CITY OF LANCASTER,<br><br>    Defendant and Respondent. | B328379<br><br>(Los Angeles County<br>Super. Ct. No. 21AVCV00041) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Stephen T. Morgan, Judge.  Affirmed.

Keosian Law LLP and Natalie Hairabedian Suri for Plaintiffs and Appellants.

Law Office of Christopher Ramsey and Christopher Ramsey for Defendant and Respondent.

_____

Plaintiffs Amanda Jolene-Rebecca Scarborough (Scarborough) and Jeffrey Woodfin (Woodfin) suffered severe injuries following a two-car collision with Charles Michael Spurgeon (Spurgeon) in the City of Lancaster (City). Plaintiffs filed the instant lawsuit against Spurgeon and the City; as against the City, plaintiffs alleged a dangerous condition of public property (Gov. Code, § 835). The City successfully moved for summary judgment and plaintiffs appeal.

We affirm.

## FACTUAL BACKGROUND

### I. *The location*

Challenger Way is a north/south rural roadway, with one lane of traffic in each direction and with a posted speed limit of 55 miles per hour. As is relevant to the issues in this appeal, Challenger Way intersects with the northern entrance/exit to Brierwood Estates Mobile Home Park (Brierwood Estates), approximately 578 feet south of Avenue H. The subject intersection is a three-directional T-intersection with northbound and southbound through traffic on Challenger Way; northbound and southbound traffic on Challenger Way at the intersection do not have a stop sign. There is a stop sign for traffic at the northern entrance/exit to Brierwood Estates.

In the area of the subject intersection, Challenger Way is flat and straight. It is free of obstructions and has more than adequate sight distances in both northbound and southbound directions. There is no corner sight issue at the northern entrance/exit to Brierwood Estates. Challenger Way has two 12-foot lanes, meeting the minimum standards of the California Highway Design Manual.

II. *The accident*

On September 1, 2020, Spurgeon was driving southbound on Challenger Way; Scarborough was driving northbound on Challenger Way, and Woodfin was a passenger in Scarborough's car. As Spurgeon was making a left turn from Challenger Way towards the northern entrance/exit of Brierwood Estates, his vehicle collided with Scarborough's vehicle.

Scarborough testified that she was driving at around 40 to 45 miles per hour prior to the collision. Spurgeon testified that he was traveling at approximately 10 to 20 miles per hour prior to the collision, and "probably about maybe less than five miles an hour" "when[he] started to make [his] left turn."

## PROCEDURAL BACKGROUND

I. *The lawsuit*

Plaintiffs filed the instant lawsuit on January 15, 2021. The first amended complaint alleges a dangerous condition of public property against the City.

II. *The City's motion for summary judgment*

On August 23, 2022, the City filed a motion for summary judgment. It argued that (1) plaintiffs could not establish that a dangerous condition existed at the location of the accident; and (2) it was immune from liability pursuant to Government Code sections 830.4 and 830.8.

The City further pointed out that pursuant to Vehicle Code section 21400, all public agencies in California are required to follow the Standards and Guidance of the California Manual of Uniform Traffic Control Devices (CA-MUTCD). Section 2B.07 governs "<u>Multi-Way Stop Applications</u>." (Bolding omitted.) Pursuant to section 2B.07, "[m]ulti-way stop control is used where the volume of traffic on the intersecting roads is

3

approximately equal." Criteria to be considered for multi-way stop sign installation includes "[f]ive or more reported crashes in a 12-month period that are susceptible to correction by a multi-way stop installation." (Italics omitted.) Because there was only one similar collision in the six years prior to September 1, 2020, the CA-MUTCD did not require additional traffic investigations and/or controls.

In support, the City offered the expert declaration of Allen G. Bourgeois (Bourgeois), a traffic engineering expert. He opined "that the available sight lines afforded to drivers on Challenger Way attempting to turn into Brierwood Estates were more than adequate for drivers using the roadway in a reasonable foreseeable manner." He also asserted that in his professional opinion, "the lane widths on Challenger Way met the minimum standards set forth in the California Highway Design Manual." Furthermore, after reviewing the Statewide Integrated Traffic Records System (SWITRS), he averred that "Challenger Way in the area of the subject collision as configured on the date of the subject collision shows no signs of operational safety deficiencies with respect to southbound left-turners and northbound through vehicles."

Finally, Bourgeois "investigated whether an all-way stop would have been appropriate along Challenger Way at the subject Brierwood Estates entrance." Citing section 2B.07 of the CA-MUTCD, "an all-way stop installation at the Brierwood Estates entrance and Challenger Way would not be appropriate and could not be justified."

4

III.  *Plaintiffs' opposition*

Plaintiffs opposed the City's motion.[1]  They argued that the subject intersection constitutes a dangerous condition as a matter of law or, at a minimum, a triable issue of fact on this issue exists.  Plaintiffs largely based their argument upon the absence of an all-way stop at the intersection.

Specifically, plaintiffs directed the trial court to section 2B.06, which governs stop sign applications, of the CA-MUTCD.  According to plaintiffs, pursuant to section 2B.06, an all-way stop is necessary if "[c]rash records indicate that three or more crashes that are susceptible to correction by the installation of a STOP sign have been reported within a 12-month period, or that five or more such crashes have been reported within a 2-years period."  (Italics omitted.)  Because there were five or more crashes susceptible to correction by a multi-way stop sign, the City was not entitled to summary judgment.  At a minimum, there is a dispute as to whether section 2B.06 or 2B.07 governed this intersection, and that dispute should be given to the jury.

They further argued that the City was not immune from liability.

In support, plaintiffs offered an expert declaration from Brad P. Avrit (Avrit), who opined that the "intersection of Challenger Way and the entrance/exit to [Brierwood Estates] is an unsafe intersection and requires the installation of a STOP Sign.  Analysis of [SWITRS] for Challenger Way between the intersection of Avenue 'H' and an approximate distance of 1700 feet south of Avenue 'H' between 2011 and 2021 indicates a total

---

[1]     Spurgeon joined in plaintiffs' opposition.

number of 23 known accidents with one fatal incident." Furthermore, "[t]he subject location of Challenger Way adjacent to the entrance/exist of [Brierwood Estates] between 2011 and 2021 has had a total of 12 incidents, including the incident involved in this litigation." "Between June 2015 and October 2016, the subject location . . . had a total of five incidents."

Avrit also opined that the City "knew or should have known of the unsafe condition this region of Challenger Way presents to drivers, passengers, bicyclists, and pedestrians." And, he believed that the City "could . . . decrease the posted speed limit from 55 MPH to 40 MPH."

IV. *The City's reply*

Among other things, the City argued that Avrit too broadly identified the relevant area for collision history. While Avrit's declaration "refers to a collision history which includes the entire one mile stretch of Challenger Way between Avenue I and Avenue H, rather than the area at or near [the subject intersection], [it] includes no evaluation of the facts or causes of any of the collisions he refers to; therefore his declaration contains no evidence that any of the collisions he refers to are **susceptible to correction** by the installation of a STOP Sign."

Setting that aside, the City argued that section 2B.06 does not apply. "A reading of Section 2B.06 establishes that this section applies only to intersections where a full stop of all vehicles is not required, and provides for the placement of a STOP Sign only on the minor-street approach to the main highway, which in this case would be the entrance/exit road from 'Brierwood Estates' . . . where a Stop sign was already in place at the time of the" accident. Multi-way stop signs are governed by

6

section 2B.07, as set forth in the City's motion and supported by Bourgeois's declaration.

Finally, because speed was not a causal factor in the accident, the speed limit in the area of the subject intersection is irrelevant.

V. *Initial trial court hearing*

On December 15, 2022, the trial court ordered the parties to meet and confer and then submit a joint document reflecting "a satellite view of where the accident occurred demonstrating the relative distance from the street in feet." It seems that the trial court was concerned about the appropriate area to consider when assessing prior collisions.

The parties complied, submitting a stipulation with photographs depicting various distances on Challenger Way. Picture No. 3 is a photograph of 1317.74934 feet south of Avenue H on Challenger Way.

VI. *Second trial court hearing*

On December 22, 2022, the trial court advised the parties that it intended to focus on picture No. 3 of the parties' stipulation in determining whether there were prior incidents within that distance. After discussion with counsel, the trial court instructed the parties to submit supplemental expert declarations focusing on the specific distance outlined in picture No. 3.

One month later, the parties simultaneously filed supplemental expert declarations.

Bourgeois reviewed all traffic collisions identified on the SWITRS report attached to Avrit's declaration filed in support of plaintiffs' opposition to the City's motion for summary judgment. Bourgeois opined that "in the approximately 9 year period from

7

2011 up to August 31, 2020 the day before [plaintiffs'] collision, there were only 4 collisions that occurred at or near the [subject intersection] that were potentially correctable with the installation of an 'All Way Stop' at the [subject intersection]." Bourgeois also explained that section 2B.07, not 2B.06, of the CA-MUTCD applied. But, even if section 2B.06 were used, it did not require the installation of an all-way stop because in the nine-year period preceding the accident here, there were only four collisions at the subject intersection that were potentially correctable by an all-way stop, and there was never a 12-month period in which there were more than two potentially correctable collisions.

Avrit reiterated his opinion that the subject intersection was unsafe and required the installation of a multi-way stop sign. His review of SWITRS showed 16 known accidents, including five accidents in between June 2015 and October 2016.[2] He also stated that the speed limit should be reduced.

VII. *Final trial court hearing*

After entertaining oral argument, the trial court granted the City's motion. It found that the subject intersection did not constitute a dangerous condition as a matter of law. "Despite Plaintiffs' presentation that a stop sign is needed and that the accidents in the relevant area fulfill the requirements of CA-MUTCD § 2B.06, Plaintiffs['] argument fails as they, themselves, do not dispute that there was a stop sign at the intersection where the incident and the sign was present at the time of the

---

[2] Unlike Bourgeois, Avrit did not declare which, if any, of these accidents were potentially correctable with the installation of an all-way stop.

8

incident." The stop sign at the entrance/exit of Brierwood Estates "follows CA-MUTCD 2B.06."

In addition, the trial court rejected plaintiffs' argument regarding speed. After all, "[t]he posted speed limit on Challenger Way was 55 mph, as provided for by statute." And, "[t]here were no speed hazards or sight distance problems." Moreover, "[i]t has been held that volume and speed alone do not constitute a dangerous condition."

VIII. *Appeal*

Plaintiffs' timely appeal ensued.

## DISCUSSION

I. *Summary judgment and standard of review*

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment bears the burden of showing that at least one element of a cause of action "cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).)

We review the trial court's order de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in that party's favor. (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39.) We affirm an order granting summary judgment if it was correct on any ground that the parties had an adequate opportunity to address in the trial court. (*Securitas Security Services USA, Inc. v. Superior Court* (2011) 197 Cal.App.4th 115, 120.)

That said, we review the trial court's evidentiary rulings for abuse of discretion. (*Mitchell v. United National Ins. Co.* (2005) 127 Cal.App.4th 457, 467.)

II. *Plaintiffs' procedural objection*

Plaintiffs argue that the trial court erred in considering the simultaneously filed supplemental expert reports without giving them the opportunity to respond to this new evidence. We are not convinced. Plaintiffs conceded below that the parties agreed to submit supplemental expert declarations *simultaneously*. They cannot now complain that the expert declarations should have been submitted separately so that they could be responsive to one another. (*Mayes v. Bryan* (2006) 139 Cal.App.4th 1075, 1091 [the appellant bears the "burden of presenting a sufficient record to establish that the claimed error was *not* invited by [it], or be barred from complaining about it on appeal"].)

Setting that aside, as plaintiffs point out in their appellate briefs, a "trial court's consideration of . . . additional evidence is not an abuse of discretion so long as the party opposing the motion for summary judgment has notice and an opportunity to respond to the new material." (*Plenger v. Alza Corp.* (1992) 11 Cal.App.4th 349, 362, fn. 8.) Here, plaintiffs did have notice and an opportunity to respond—they were served with the City's supplemental expert declaration on January 23, 2023, over a week before the hearing on the motion for summary judgment. And, not only were plaintiffs allowed to submit their own competing expert declaration, they were also permitted to present argument at the hearing. In fact, at the hearing, plaintiffs addressed the parties' dispute over whether section 2B.06 or 2B.07 applied and argued that section 2B.06 governed—as it had

10

in its opposition to the City's motion.  It follows that plaintiffs' due process rights were not violated.

We thus turn our attention to the substantive merits of the City's motion.

III.  *Relevant law*

Government Code section 835 provides:  "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:  [¶]  (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or  [¶]  (b) The public entity had actual or constructive notice of the dangerous condition under [Government Code] Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."  (See also *Garcia v. American Golf Corp.* (2017) 11 Cal.App.5th 532, 539–540.)

Government Code section 830, subdivision (a), defines a dangerous condition as a "condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."  Stated differently, "[a]ny property can be dangerous if used in a sufficiently abnormal manner; a public entity is required only to make its property safe for reasonably foreseeable careful use.  [Citation.]" (*Mathews v. City of Cerritos* (1992) 2 Cal.App.4th 1380, 1384; see

11

also *Fuller v. State of California* (1975) 51 Cal.App.3d 926, 940 ["'a public entity should not be liable for injuries resulting from the use of a highway—safe for use at 65—at 90 miles an hour, even though it may be foreseeable that persons will drive that fast'"].)

"A condition is not a dangerous condition . . . if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used." (Gov. Code, § 830.2.) "A condition is not a dangerous condition within the meaning of this chapter merely because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code or distinctive roadway markings as described in Section 21460 of the Vehicle Code." (Gov. Code, § 830.4.)

By statute, "the happening of the accident which results in the injury is not in and of itself evidence that public property was in a dangerous condition." (Gov. Code, § 830.5, subd. (a).)

In determining "whether a given condition of public property is minor or insignificant as a matter of law," we "consider both the physical description of the condition, and 'whether there existed any circumstances surrounding the accident which might have rendered the defect more dangerous than its mere abstract [description] would indicate.' [Citation.] Where appropriate, the court should consider not only the

12

intrinsic nature and quality of the condition, but also other factors such as the time and place of the occurrence. [Citation.] 'Furthermore, the court should see if there is any evidence that other persons have been injured on this same defect.' [Citation.]" (*Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 234.)

Although the question of whether a dangerous condition exists is often one of fact, the issue may be resolved as a question of law when reasonable minds can only draw one conclusion from the facts. (*Chowdhury v. City of Los Angeles* (1995) 38 Cal.App.4th 1187, 1194.) In other words, "'[i]t is for the court to determine whether, as a matter of law, a given defect is not dangerous.'" (*Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701, 704.) "This is to guarantee that [public entities] do not become insurers against the injuries arising from trivial defects." (*Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 734.)

IV. *Analysis*

Applying these legal principles, we conclude that the trial court properly granted the City's motion for summary judgment. The location of the accident did not constitute a dangerous condition as a matter of law. Challenger Way, at the location of the accident, is a two-lane, rural undivided highway with a posted speed limit of 55 miles per hour. In the area of the subject intersection, Challenger Way is flat and straight. It is free of obstructions and has more than adequate sight distances in both northbound and southbound directions. There is no corner sight issue at the northern entrance/exit to Brierwood Estates. Challenger Way has two 12-foot lanes, meeting the minimum standards of the California Highway Design Manual. And, importantly, even though the intersection does not have an all-

13

way stop, there is a stop sign for traffic at the northern entrance/exit to Brierwood Estates.

Urging us to conclude otherwise, plaintiffs rely upon section 2B.06 and argue that an all-way stop was required. We disagree. Rather, as the trial court found, section 2B.06 does not require the City to install an all-way stop at the subject intersection. All that section requires is the installation of a stop sign on the street with less traffic (the minor street approach), which in this case would be the entrance/exit of Brierwood Estates. And it is undisputed that such a stop sign exists.

Alternatively, plaintiffs argue that based upon Bourgeois and Avrit's competing declarations, there is a triable issue of fact as to whether section 2B.06 applies[3] (and presumably whether it requires an all-way stop at the subject intersection).

The "'rule that a trial court must liberally construe the evidence submitted in opposition to a summary judgment motion applies in ruling on both the admissibility of expert testimony and its sufficiency to create a triable issue of fact. [Citations.]'" (*Michaels v. Greenberg Traurig, LLP* (2021) 62 Cal.App.5th 512, 524.) "However, even when [a] witness qualifies as an expert, he or she does not possess a carte blanche to express any opinion within the area of expertise. [Citation.] For example, an expert's opinion based on assumptions of fact without evidentiary support

_____

[3] For the sake of completeness, we address this argument, even though this question is actually an issue of law for the court to decide de novo. (See, e.g., *Vidrio v. Hernandez* (2009) 172 Cal.App.4th 1443, 1452 [proper interpretation of statute or rule of court is a question of law]; *Missionary Guadalupanas of Holy Spirit Inc. v. Rouillard* (2019) 38 Cal.App.5th 421, 436 [interpretation of a regulation is a question of law].)

[citation], or on speculative or conjectural factors [citation], has no evidentiary value [citation] and may be excluded from evidence.  [Citations.]  Similarly, when an expert's opinion is purely conclusory because unaccompanied by a reasoned explanation connecting the factual predicates to the ultimate conclusion, that opinion has no evidentiary value." (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117.)

Here, both of Avrit's declarations cite to and rely upon section 2B.06.  But he fails to offer any explanation as to *why* section 2B.06, and not 2B.07, applies.  Under these circumstances, there is no triable issue of fact for the jury. (*Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 155.)

Certainly, an inquiry into the question of dangerousness involves the consideration of such matters as whether the condition has been the cause of other accidents.  (*Lane v. City of Sacramento* (2010) 183 Cal.App.4th 1337, 1346.)  But, even liberally construing Avrit's declarations regarding the number of accidents, plaintiffs offer no evidence that the absence of a multi-way stop at the subject intersection *caused* any of those accidents.

To the extent plaintiffs contend that subject intersection constitutes a dangerous condition because of the posted speed limit, they still cannot defeat the City's motion for summary judgment.

"An essential element of a cause of action for damages based on a dangerous condition of public property is causation" and "the issue can be decided as a matter of law where the facts of a case can permit only one reasonable conclusion." (*Milligan v. Golden Gate Bridge Highway & Transportation Dist.* (2004)

120 Cal.App.4th 1, 8–9; see also *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1135 ["liability is imposed only when there is some defect in the property itself and a causal connection is established between the defect and the injury"].) To establish causation, the plaintiff must present evidence that "the defendant's conduct was a 'substantial factor' in bringing about his or her harm." (*Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 312.)

Here there is no evidence that speed contributed to the collision. Both drivers testified that they were driving at speeds below the posted speed limit. Thus, decreasing the speed limit from 55 miles per hour to 40 miles per hour would not have potentially avoided the accident.

All remaining arguments are moot.

## DISPOSITION

The judgment is affirmed. The City is entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
                ASHMANN-GERST

We concur:

_____, P. J.
LUI

_____, J.
HOFFSTADT

16